UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN F. LEABERRY, | ) | CASE NO.: 3:15-cv-284 |
| | ) | |
| Plaintiff, | ) | COMPLAINT FOR |
| v. | ) | DECLARATORY RELIEF |
| | ) | |
| WINCHESTER GLOBAL CAPITAL, LLC, | ) | |
| WINCHESTER CAPITAL PARTNERS, LLC, | ) | |
| KENT ENGELMEIER, and | ) | |
| JOSEPH CUTULI, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff John F. Leaberry states the following in support of his claim for declaratory relief against Defendants Winchester Global Capital, LLC ("Winchester Global"), Winchester Capital Partners, LLC ("Winchester Partners"), Kent Engelmeier, and Joseph Cutuli.

### PARTIES

1.      Plaintiff John F. Leaberry is an attorney in good standing with the Supreme Court of West Virginia. Mr. Leaberry maintains a law practice and office in Lewisburg, West Virginia, and a residence in Florida, and is a citizen of Florida.

2.      Defendant Winchester Global is a Pennsylvania limited liability company with a principal place of business located at Century Building, Suite 200, 130 Seventh Avenue, Pittsburgh, Pennsylvania 15222 whose members are Kent Engelmeier and Joseph Cutuli. Though Winchester Global is currently not operating, its principal place of business was in

Pittsburgh, Pennsylvania. Part of Winchester Global's business was assisting companies in their efforts to raise capital.

3.      Defendant Winchester Partners is a Pennsylvania limited liability company with a principal place of business located at 782 Valleyview Road, Pittsburgh, Pennsylvania 15243 whose members are Kent Engelmeier and Joseph Cutuli. Though Winchester Partners is currently not operating, its principal place of business was in Pittsburgh, Pennsylvania.

4.      Defendant Kent Engelmeier is a citizen of Pennsylvania with a principal place of residence at 728 Valleyview Road, Pittsburgh, Pennsylvania 15243.

5.      Defendant Joseph Cutuli is a citizen of Pennsylvania with a principal place of residence at 229 Hawthorne Street, Johnstown, Pennsylvania 15904.

## JURISDICTION AND VENUE

6.      This action is brought pursuant to 28 U.S.C. §§ 2201-2202. Mr. Leaberry seeks a declaratory judgment as to the obligations of the Defendants to make contribution to Mr. Leaberry for any judgment that may be entered against Mr. Leaberry in certain litigation described below that has been brought against Mr. Leaberry in the United States District Court for the Southern District of Indiana by nonparty Gregg Summerville.

7.      The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because it arises in part from the statutes and regulations of the United States.

8.      The Court also has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because it involves citizens of different states and the amount in controversy exceeds $75,000.

9.      The Court has personal jurisdiction over each of the Defendants because of the Defendants' purposeful activities in this District.

2

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391.

11.     As a result of the lawsuit brought by Gregg Summerville against Mr. Leaberry and others in the Southern District of Indiana, there is an actual case or controversy between the parties.

**ALLEGATIONS COMMON TO ALL COUNTS**

12.     Covington Coal Company ("Covington") is a West Virginia limited liability company.  Peter Moran is the managing member of Covington.  Peter Moran's brother, Paul Moran, is a former employee of Covington who was extensively involved in Covington's business operations.

13.     In 2012, Covington and Winchester Global engaged in discussions concerning a possible investment by Winchester Global in Covington.  Covington and Winchester Global also engaged in discussions concerning other potential investors whom Winchester Global may be able to locate who may have an interest in investing in Covington.

14.     One of the other potential investors whom Winchester Global located was Gregg Summerville, an Indiana resident who had been a close personal friend of Mr. Engelmeier's for many years.

15.     Winchester Global agreed to invest $2 million in Covington.  $500,000 was to be an equity purchase, and $1,500,000 was to be a loan.  Mr. Engelmeier and Mr. Cutuli formed Winchester Capital for the purpose of handling Winchester Global's investment in Covington.

16.     Mr. Summerville agreed to loan $250,000 to Covington.  Mr. Summerville was to receive interest at 15% on the loan.  As part of the agreement, Paul Moran and Peter Moran agreed to personally guarantee Covington's obligation to Mr. Summerville.

17.     Mr. Leaberry provided legal advice to Covington with respect to both the

3

Winchester investment and the Covington loan.

18.     The Winchester investment was closed on November 2, 2012 at a meeting in Pittsburgh that was attended by Mr. Engelmeier, Mr. Cutuli, Peter Moran, Paul Moran, and Mr. Leaberry.   At that meeting, all necessary documents for the Winchester investment were executed, and Winchester Capital tendered two checks to Covington to fund the investment: One check for the $500,000 equity investment, and a second check for $1,500,000 for the loan. Both checks were drawn on Winchester Capital's account at PNC Bank.

19.     On November 5, 2012, Mr. Engelmeier, acting on behalf of Winchester Global and Winchester Capital, sent an email to Mr. Summerville telling him that the Winchester investment had closed.

20.     Also, on November 6, 2012, at Mr. Engelmeier's request, Mr. Leaberry sent an email to Mr. Summerville stating that the Winchester investment had closed and funded.   Mr. Engelmeier was carbon-copied on that email, and never stated anything to Mr. Summerville to contradict or qualify Mr. Leaberry's statement.

21.     On November 13, 2012, Mr. Summerville wired $250,000 to Covington to fund his loan.   Also on November 13, 2012, documents relating to the loan and bearing Mr. Summerville's signature arrived at Mr. Leaberry's office.   On that date, Mr. Leaberry sent an email to Mr. Summerville acknowledging receipt of the signed documents, and confirming that Covington had received the loan funds.

22.     On or about November 8, 2012 Covington deposited the $500,000 check into its account at First Bank of Charleston, which in turn presented the check to Winchester Capital's bank, PNC.

23.     Unbeknownst to Mr. Leaberry, on or about November 11, 2012, PNC informed

4

First Bank of Charleston that Winchester Capital had insufficient funds to cover the $500,000 check. First Bank of Charleston presented the check to PNC for payment a second time. However, Winchester Capital still did not have sufficient funds to cover the check, and First Bank of Charleston dishonored the Winchester check on November 15, 2012.

24.     Covington never attempted to deposit the $1,500,000 Winchester check.

25.     Neither Winchester Capital, nor Winchester Global, nor Mr. Engelmeier, nor Mr. Cutuli ever paid to Covington the funds that Winchester Capital agreed to pay for its loan to, and equity investment in, Covington.

26.     After making two payments to Mr. Summerville of approximately $25,000, Covington eventually defaulted on its obligation to repay the loan from Mr. Summerville.

27.     In late 2014, after Mr. Summerville threatened to bring suit over Covington's failure to repay the loan, Covington, Paul Moran, and Peter Moran entered into a settlement agreement with Mr. Summerville.

28.     When Covington and the Morans failed to pay pursuant to the settlement agreement, Mr. Summerville brought suit on December 24, 2014 in the United States District Court for the Southern District of Indiana against Covington,[1] Paul Moran, Peter Moran, Moran Coal Management, LLC, and John Leaberry, thereby initiating Case No. 1:14-cv-2009 (the "Indiana Lawsuit"). In the Indiana Lawsuit, Mr. Summerville seeks to recover the unpaid balance of the loan, as well as his attorney fees and costs.[2]

29.     In Count I of the Indiana Lawsuit, Mr. Summerville sought to recover against all

---

[1] After Mr. Summerville filed his Complaint in the Southern District of Indiana, Covington sought protection under Chapter 11 of the Bankruptcy Code. Mr. Summerville subsequently filed an Amended Complaint that omitted Covington as a defendant.

[2] Mr. Summerville also seeks recovery under Indiana Code § 34-24-3-1, which provides certain additional remedies to plaintiffs who can prove that they incurred a loss due to violations of certain provisions of the Indiana criminal code.

5

{P1218468.1}

defendants under the Securities Exchange Act, Section 10(b), and Rule 10b-5.

30.     With respect to Mr. Leaberry, Mr. Summerville contends that Mr. Leaberry knowingly made a false statement of material fact when he stated in his November 6, 2012 email to Mr. Summerville that Winchester Capital's investment in Covington had closed and funded.

31.     Mr. Summerville also contends that Mr. Leaberry had a duty to inform him once Mr. Leaberry learned that Winchester Capital had insufficient funds to cover the two checks that it tendered for its investment in Covington, even though Mr. Leaberry did not learn that Winchester had insufficient funds until after Mr. Summerville's loan to Covington had closed.

32.     In Counts II and III of the Indiana Lawsuit, Mr. Summerville seeks to recover from the defendants under the Indiana and West Virginia Securities Act, respectively, on the same basis upon which Mr. Summerville seeks recovery under Section 10(b) of the Securities Exchange Act and Rule 10b-5.

33.     Mr. Summerville's allegations against Mr. Leaberry are false; Mr. Leaberry has never knowingly or intentionally made a false statement to Mr. Summerville, and Mr. Leaberry has denied Mr. Summerville's allegations in the Indiana Lawsuit. Nonetheless, the outcome of the Indiana Lawsuit cannot be predicted with certainty, and there is a risk that Mr. Leaberry will be found liable to Mr. Summerville for all or a portion of the amounts that Mr. Summerville seeks to recover.

## COUNT I – DECLARATORY JUDGMENT FOR  CONTRIBUTION UNDER THE SECURITIES EXCHANGE ACT

34.     Mr. Leaberry incorporates by reference Paragraphs 1 through 33 above as if fully set forth herein

35.     Mr. Leaberry sent the November 6, 2012 email to Mr. Summerville at Mr. Engelmeier's express and explicit request.

6

36.    In addition, Mr. Engelmeier was copied on Mr. Leaberry's November 6 email, and Mr. Engelmeier never stated to Mr. Summerville that Mr. Leaberry's statements in the email were in any way inaccurate or misleading.   In remaining silent, Mr. Engelmeier implicitly ratified and confirmed Mr. Leaberry's statements.

37.    To the extent the District Court for the Southern District of Indiana finds that Mr. Leaberry is liable to Mr. Summerville either as a result of Mr. Leaberry's November 6, 2012 representation that the Winchester investment had closed and funded, or as a result of Mr. Leaberry's failure to correct that statement afterward, Mr. Engelmeier shares Mr. Leaberry's fault for the November 6 statement and for any failure to correct that statement.

38.    In requesting Mr. Leaberry to inform Mr. Summerville that the Winchester investment had closed and funded, Mr. Engelmeier was acting on behalf of, as an agent of, and in the course of his employment by, Winchester Global and Winchester Capital.

39.    In remaining silent, and thereby implicitly ratifying and confirming Mr. Leaberry's November 6 email to Mr. Summerville, Mr. Engelmeier was acting on behalf of, as an agent of, and in the course of his employment by, Winchester Global and Winchester Capital.

40.    As Mr. Engelmeier's principle and employer, Winchester Global and Winchester Capital are liable for Mr. Engelmeier's actions.

41.    Neither Winchester Global nor Winchester Capital had sufficient capital for the businesses in which they were purportedly engaged.   For instance, at the time that Winchester Capital agreed to purchase a $500,000 equity stake in Covington and to loan Covington $1,500,000, neither Winchester Global nor Winchester Capital had even a fraction of that amount available.   Rather, funds for the Winchester investment in Covington were to come entirely from Mr. Cutuli's personal assets.

7

{P1218468.1}

42.     Winchester Global and Winchester Capital were the alter egos of Mr. Engelmeier and Mr. Cutuli.

43.     Thus, though Winchester Global and Winchester Capital were organized as limited liability companies, sufficient basis exists to pierce the limited liability veil of these companies and charge Mr. Engelmeier and Mr. Cutuli with the financial obligations of Winchester Global and Winchester Capital to Mr. Leaberry.

WHEREFORE, Mr. Leaberry respectfully prays that the Court enter judgment in his favor providing that Defendants Winchester Global, Winchester Capital, Kent Engelmeier, and Joseph Cutuli are liable for contribution to Mr. Leaberry with respect to any judgment in the Indiana Lawsuit favor of Gregg Summerville pursuant to Section 10(b) of the Securities Exchange Act or Rule 10b-5, that the Court award Mr. Leaberry his attorney fees and costs incurred in bringing this action, and that the Court award Mr. Leaberry all other just and proper relief.

**COUNT II – DECLARATORY JUDGMENT FOR
CONTRIBUTION UNDER THE INDIANA SECURITIES ACT**

44.     Mr. Leaberry incorporates Paragraphs 1 through 43 above as if fully set forth herein.

45.     For the reasons set forth above, Defendants are also liable to Mr. Leaberry for contribution in the event that the District Court for the Southern District of Indiana enters judgment against Mr. Leaberry and in favor of Gregg Summerville on Mr. Summerville's claim under the Indiana Securities Act.

WHEREFORE, Mr. Leaberry respectfully prays that the Court enter judgment in his favor providing that Defendants Winchester Global, Winchester Capital, Kent Engelmeier, and Joseph Cutuli are liable for contribution to Mr. Leaberry with respect to any judgment in the

8

{P1218468.1}

Indiana Lawsuit favor of Gregg Summerville pursuant to the Indiana Securities Act, that the Court award Mr. Leaberry his attorney fees and costs incurred in bringing this action, and that the Court award Mr. Leaberry all other just and proper relief.

## COUNT III – DECLARATORY JUDGMENT FOR
## CONTRIBUTION UNDER THE WEST VIRGINIA SECURITIES ACT

46.   Mr. Leaberry incorporates Paragraphs 1 through 45 above as if fully set forth herein.

47.   For the reasons set forth above, Defendants are also liable to Mr. Leaberry for contribution in the event that the District Court for the Southern District of Indiana enters judgment against Mr. Leaberry and in favor of Gregg Summerville on Mr. Summerville's claim under the West Virginia Securities Act.

WHEREFORE, Mr. Leaberry respectfully prays that the Court enter judgment in his favor providing that Defendants Winchester Global, Winchester Capital, Kent Engelmeier, and Joseph Cutuli are liable for contribution to Mr. Leaberry with respect to any judgment in the Indiana Lawsuit favor of Gregg Summerville pursuant to the West Virginia Securities Act, that the Court award Mr. Leaberry his attorney fees and costs incurred in bringing this action, and that the Court award Mr. Leaberry all other just and proper relief.

### JURY DEMAND

Plaintiff John Leaberry hereby demands a trial by jury as to all issues so triable.

{P1218468.1}

Respectfully submitted,

MEYER, DARRAGH, BUCKLER,
BEBENEK & ECK, P.L.L.C.


By:  /s/ David G. Meredith
    PAUL R. ROBINSON, ESQUIRE
    PA I.D. No. 65581
    DAVID G. MEREDITH, ESQUIRE
    PA I.D. No. 307466
    Attorneys for John F. Leaberry
    U.S. Steel Tower, Suite 4850
    600 Grant Street
    Pittsburgh, PA 15219
    Telephone:  (412) 261-6600
    Fax:  (412) 471-2754
    Email:  probinson@mdbbe.com
    Email:  dmeredith@mdbbe.com

Dated:      November 5, 2015

10